## E.D.S. FEDERAL CORPORATION

v.

## The UNITED STATES.

## No. 336–82C.

United States Claims Court.

Jan. 3, 1983.

G. Russell Mortenson, Dallas, Tex., for plaintiff; Robert D. Wallick, Washington, D.C., of counsel.

M. Susan Burnett, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

LYDON, Judge:

This case comes before the court on defendant's motion to transfer this suit, pursuant to 41 U.S.C. § 609(d), to the Armed Services Board of Contract Appeals (ASBCA or Board), plaintiff's opposition thereto, and plaintiff's alternative motion to consolidate cases presently pending before the Board with this suit. After careful consideration of the submissions of the parties, it is deemed in the best interests of all concerned to transfer this suit to the Board thereby consolidating the claims, presently before the Board and the court, which emanate from one contract and involve the

Liquidated Damages provisions of said contract.

On August 25, 1978, plaintiff contracted (No. HCFA–78–050–2) with the Secretary of Health, Education and Welfare (HEW) to perform services as a Medicare Part B carrier for the State of Illinois from 1978 through September 30, 1983. Under Appendix B of the contract there were Liquidated Damages provisions wherein the contractor (denoted "Carrier" in the contract) was required to meet specified work-related performance standards. The contract established a two-faceted system for quality control to evaluate the contractor's performance of the contract. Under System One, the evaluation was based on quantitative workload data. Under System Two, evaluation was based on continuous reviews and determinations of the contractor's compliance with all pertinent operational instructions and was functional in nature. Under each system, the contract set forth indicators and criteria that were to be considered. The contract provided that if the contractor failed to satisfy, on a quarterly basis, the established performance standards, there would be a reduction in the total price to be paid the contractor in accordance with a mechanism set forth in the "Reduction in Total Fixed Price" provisions of the contract. For example, should the contractor fail to meet, on a quarterly basis, one or more of the fixed workload related standards under System One as established by the Secretary and set forth in the contract, 0.125% of the total fixed price would be denied the contractor for each standard failed. Should the contractor fail to satisfy, on a quarterly basis, any of the seven standards under System Two as specified in the contract, 0.125% of the total fixed price would be denied the contractor for each standard failed.

During contract performance, the Secretary assessed "liquidated damages" against the contractor. The contractor, plaintiff herein, appealed these assessments to the ASBCA as reflected below:

1. *ASBCA No. 27203.* On May 4, 1982, appealed $104,500 liquidated damage assessment covering period Jan.—Mar. 1981.

2. *ASBCA No. 27302.* On July 6, 1982, appealed $261,250 liquidated damage assessment covering the periods Oct.—Dec. 1980 and April—June 1981.

3. *ASBCA No. 27490.* On August 20, 1982, appealed $52,250 liquidated damage assessment covering period July—Sept. 1981.

The total liquidated damage assessment involved in these three claims is $418,000, and each assessment was made for failure to meet the standards under System One. The three cases were consolidated for purposes of further proceedings before the Board.

On October 5, 1982, plaintiff filed suit in the United States Court of Claims contesting a liquidated damage assessment of $104,500 covering the period October—December 1980; a liquidated damage assessment of $104,500 covering the period January—March 1981; and a liquidated damage assessment of $104,500 covering the period April—June 1981. The total liquidated damage assessment involved in the court suit is $313,500, and each assessment was made for failure to meet the standards under System Two.

Plaintiff elected, pursuant to provisions of the Contract Disputes Act of 1978, 41 U.S.C. §§ 606 and 609(a) (Supp. IV 1980) (CDA) to pursue its challenges to a series of decisions by the contracting officer both before the Board and before this court. Such a splitting of causes of action, permitted by the CDA, *supra,* brought into play 28 U.S.C. § 609(d), which provides:

If two or more suits arising from one contract are filed in the Court of Claims and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the Court of Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

Defendant seeks, pursuant to section 609(d), *supra,* to transfer the court case to the ASBCA. Plaintiff opposes, basically on

the grounds that the claims filed with the Board were complex and difficult whereas the claims filed with the court were simple and .less involved. Accordingly, plaintiff argues, the simple claims were filed in court because "it was thought great confusion and delay might result from the inevitable consolidation with the other dockets which would follow from an ASBCA filing." Quite frankly, it is difficult to accept this reason as a basis for denying defendant's motion on the strength of the materials presently before the court.

Whether a suit filed in court should be transferred to an agency board is a discretionary action that embraces a variety of factors.[1] It is generally an *ad hoc* determination. Plaintiff stresses the admonitions in the legislative history of the CDA that claims should not be consolidated only for the sake of consolidation, and that the "decision to consolidate should not arbitrarily take away the contractor's right to his day in court by consolidating two suits in the agency board and thus forcing one suit out of the court." S.Rep. No. 95–1118, 95th Cong. 2d Sess. *reprinted* in 1978 *U.S.Code Cong. & Ad.News* 5235, 5265. *See also Warwick Construction, Inc. v. United States,* 650 F.2d 289, Ct.Cl. No. 85–80C, p. 6 (order of Aug. 29, 1980). These admonitions are balanced by the statutory language that consolidation will be appropriate where the "interests of justice" so dictate.

In the pleadings filed before the Board and the court, plaintiff asserts that the damages it had to pay, pursuant to the determinations of the contracting officer were not liquidated damages but constituted an unlawful penalty. In these pleadings, plaintiff also alleged that the Secretary's application and utilization of standards established by the contract were arbitrary, capricious and grossly erroneous. On the face of the pleadings, it would appear that all these claims involving the liquidated damages provisions of the same contract should be handled in one trial before the same forum to insure uniformity of interpretation. It may well be that an examination of the overall scheme for the assessment of liquidated damages under the contract in question may be required to render a determination dispositive of claims under both System One and System Two. Accepting plaintiff's assertion that the simple claims are before the court and the complex claims are before the Board, a trial and ruling on the simple issue alone may well ignore factors present in the complex case which might have placed a different light on the matter had all the involved claims, simple and complex, been the subject of one trial before one forum.[2] While plaintiff argues that the claims are unrelated, it would appear they are related in that they all provided a basis for the assessment of damages against plaintiff for failure to meet certain standards. As such, the interests of justice would be better served by

---

1. While no one factor controls in this case, it is noted that plaintiff elected to proceed before the Board on its initial claims arising under the contract; that its claims before the Board are somewhat larger than those in court; that the same contract provision (Liquidated Damages) is at issue in all claims; and that some of the claims before the Board cover the same time period as some of the claims in court. Plaintiff stresses that it will use different witnesses for its Board claims *vis-a-vis* the court claims but defendant states it will use the same witnesses for all claims. As for the present status of the proceedings, it is understood that discovery is proceeding on the Board claims. While a pretrial order has been issued in the court case, plaintiff has not filed any response thereto, and recently moved for an extension of time to do so. Further, plaintiff recently changed attorneys in the court case.

2. The legislative history does not support plaintiff's position that both forums proceed on the claims before them. If the complex claims were first filed in court and while the claims were pending before the court, simple claims arose under the same contract and the contractor wanted to utilize the accelerated procedure before the Board, splitting the claims between the two forums would be sanctioned. *See Roubin & Janeiro, Inc. v. United States,* 652 F.2d 70, Ct.Cl. No. 396–80C, p. 3 n. 1 and text (order of Mar. 13, 1981). But that is not the case here. The complex cases were filed before the Board and the simple case was filed in court where there is no accelerated procedure and there is no assurance that proceedings would be shorter in court than before the Board. Accordingly, splitting the claims are not appropriate in this case.

having one trial in one forum on the matter instead of having two separate trials in two different forums. *See Dravo-Groves v. United States,* Ct.Cl. No. 371–81C (order of July 16, 1982) and cases cited therein.

Plaintiff, recognizing that such a ruling was probable argues, alternatively, that the court should order the Board claims consolidated with the court claims thereby giving deference to plaintiff's ultimate forum choice as a matter of policy. Plaintiff's suggestion is not well taken. Plaintiff could have elected to proceed in court initially. It was not forced to file its claims with the Board. As a result, there is no basis for adopting its policy argument in this case.

Under the facts as alleged, the Board now has before it the complex claims and the court has before it the simple claims. In this situation it is concluded the "hair (the simple claims) should follow the hide (the complex claims)." It is felt that the legislative history of the CDA supports this approach. *See* n. 2, *supra. See Roubin & Janeiro, Inc. v. United States,* 652 F.2d 70, Ct.Cl. No. 396–80C, pp. 7–8 (order of Mar. 13, 1981).

IT IS THEREFORE ORDERED, upon consideration of the submissions of the parties, that this case be transferred to the ASBCA under the authority of 41 U.S.C. § 609(d) and consolidated with the following Board cases: ASBCA No. 27203, ASBCA No. 27302, and ASBCA No. 27490.