**MORSE DIESEL INTERNATIONAL, INC., d/b/a AMEC Construction Management, Inc., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Nos. 99–279C, 99–529C, 99–530C, 00–531C, 03–1537C.

United States Court of Federal Claims.

July 15, 2005.

Craig S. King, Arent Fox, PLLC, Washington, D.C., counsel for plaintiff.

Domenique Grace Kirchner, United States Department of Justice, Washington, D.C., counsel for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING THE TRANSFER OF GENERAL SERVICES ADMINISTRATION BOARD OF CONTRACT APPEALS NO. 16503 TO THE UNITED STATES COURT OF FEDERAL CLAIMS

BRADEN, Judge.

On September 20, 2004, AMEC Construction Management, Inc. ("ACMI") filed an action at the General Services Administration Board of Contract Appeals, docketed as GSBCA No. 16503, that is related and collateral to Case No. 99–279C, Case No. 99–529C, Case No. 99–530C, Case No. 00–531C, and Case No. 03–1537C, pending in the United States Court of Federal Claims. For the reasons discussed herein, and with the consent of the Honorable Catherine B. Hyatt of the General Services Administration Board of Contract Appeals, the court has determined to order the transfer of GSBCA No. 16503 to the United States Court of Federal Claims, pursuant to the Contract Disputes Act, 41 U.S.C. § 609(d).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 19, 1995, Morse Diesel, International, Inc. ("MDI") was awarded Contract No. GS09P95KTC0032 by the General Services Administration ("GSA") to construct the United States Courthouse and Federal Office Building in Sacramento. At that time, MDI was a subsidiary of and owned by AMEC, p.l.c., which is now a publicly held international "support services" company in the engineering and technical services, oil and gas, and project scheduling business, and is traded on the London Stock Exchange, with net operating assets at the close of 2004 of £286.8 million and an operating profit of £149.6 million. *See* AMEC, p.l.c. 2004 ANNUAL REPORT at 1, 25, 35.

On May 5, 1999, MDI filed a Complaint in the United States Court of Federal Claims alleging a breach of contract and breach of

obligation of good faith and fair dealing regarding Contract No. GS06P95GZC0501, Phase II of the construction of the Thomas F. Eagleton Federal Courthouse in St. Louis ("Phase II of the St. Louis Courthouse"). Since that time, four other related cases were initiated in the court and have been consolidated with this action, Case No. 99–279C.[1] Subsequently, the United States ("Government") asserted seven counterclaims hereunder: the False Claims Act, 31 U.S.C. § 3729(a)(1) and 31 U.S.C. § 3729(a)(2); the Forfeiture of Fraudulent Claims Act, 28 U.S.C. § 2514; the Anti–Kickback Act of 1986, 41 U.S.C. § 51 *et seq.*; as well as under common law for breach of contract and the equitable doctrine of restitution.

By early 2001, MDI was doing business as ACMI. On August 27, 2001, ACMI filed a certified claim with the relevant GSA Contracting Officer seeking $19,545,242 for increased costs of performance, plus contract receivables and remission of liquidated damages in the amount of $3,119,812. *See* Sept.

20, 2004 letter from Mr. Craig S. King, Esquire to Ms. Beatrice Jones, Clerk, General Services Administration Board of Contract Appeals, at 1, attached to November 24, 2004 Government Motion to Transfer and Consolidate.[2] In addition, ACMI requested a final decision of subcontractor claims in the amount of $6,092,493.84. *Id.* Subsequently, ACMI filed two certified requests for a final decision on August 27, 2001. *Id.* On December 19, 2001, GSA informed ACMI that the certified claims were being audited. *Id.*

On or about September 20, 2004, ACMI filed an action at the General Services Administration Board of Contract Appeals, docketed as GSBCA No. 16503, requesting that the GSA Contracting Officer's failure to act on ACMI's August 27, 2001 certified claim be deemed a denial, pursuant to 41 U.S.C. § 605(c)(3). *Id.* at 2. As further explained in a Memorandum Opinion Regarding the Government's Anti–Kickback Act of 1986 Counterclaim in this action, issued to-

---

1. On July 29, 1999, MDI filed a Complaint in Case No. 99–529C in the United States Court of Federal Claims for Declaratory Judgment and to Convert Termination for Default to Termination of Convenience of the Government regarding Contract No. GS06P95GZC0501, Phase II of the St. Louis Courthouse Project. On May 4, 2000, the Government filed an Amended Answer and Counterclaims, including claims asserted under the False Claims Act, 31 U.S.C. § 3729(a)(2) and Forfeiture of Fraudulent Claims Act–Special Plea in Fraud, 28 U.S.C. § 2514. On July 18, 2000, the Honorable Loren A. Smith entered an Order consolidating Case No. 99–529C with Case No. 99–279C.

On July 29, 1999, MDI also filed a Complaint in Case No. 99–530C in the United States Court of Federal Claims for Reimbursement Costs in connection with Contract No. GS06P95GZC0501, Phase II of the St. Louis Courthouse Project. On May 4, 2000, the Government filed an Amended Answer and Counterclaims under the False Claims Act, 31 U.S.C. § 3729(a)(2) and Forfeiture of Fraudulent Claims Act–Special Plea in Fraud, 28 U.S.C. § 2514. On July 18, 2000, the Honorable Loren A. Smith entered an Order Consolidating Case No. 99–530C with Case No. 99–279C with Case No. 99–529C.

On September 1, 2000, MDI filed a Complaint in Case No. 00–531C in the United States Court of Federal Claims seeking a claim for reimbursement arising from a May 2, 1996 agreement regarding Contract No. GS06P95GZC0501, Phase II of the St. Louis Courthouse Project. On

December 18, 2000, the Government filed an Answer and Counterclaims. On January 11, 2002, the Honorable Loren A. Smith entered an Order consolidating Case No. 00–531C, Case No. 99–529C, and Case No. 99–530C with Case No. 99–279C.

On June 20, 2003, ACMI f/k/a MDI filed Case No. 03–1537C in the United States Court of Federal Claims to appeal a June 24, 2002 final decision of a GSA Contracting Officer denying ACMI's claim for a total contract price affecting ACMI's proof of convenience of termination costs under Contract No. GSA06P95GZC0501, Phase II of the St. Louis Courthouse Project. On November 21, 2003, the Government filed an Answer and Counterclaims regarding Contract No. GS06P95GZC0501, Phase II of the St. Louis Courthouse Project, as well as Contract No. GS06P94GYC0037 regarding Phase I of the St. Louis Courthouse Project and Contract No. GS09P95KTC0032 regarding the construction of the United States Courthouse and Federal Building in Sacramento, California, also the subject of GSBCA No. 16503, and Contract No. GS09P95KTC0010 regarding seismic and electrical upgrades of the United States Custom House in San Francisco.

As a result of these four consolidations, Case No. 99–529C, Case No. 99–530C, Case No. 00–531C, and Case No. 03–1537C now are all consolidated under this docket, Case No. 99–279C.

2. ACMI apparently is no longer claiming $135,000 of that amount, representing "Estimated Consultant fees."

gether with this Memorandum Opinion and Order, as of September 20, 2004, the date of the docketing of GSBCA No. 16503, MDI and ACMI were no longer owned by AMEC, p.l.c. On or about March 11, 2004, MDI d/b/a ACMI was sold by AMEC, p.l.c. to Facchina–McGaughan LLC, a joint venture formed by Paul V. Facchina, Sr. of LaPlata, Maryland and A.S. McGaughan, Jr., the former head of ACMI's Southeastern Division, for a "minimal" amount. *See* http://www.amec.com/news/mediareleasedetails.asp?pageid=34 & mediaID=881 at 1–2; *see also* http://www.southeast.construction.com/news/florida/archive/0407.asp.

On November 24, 2004, the Government filed a Motion to Transfer GSBCA No. 16503 to the United State Court of Federal Claims, pursuant to 41 U.S.C. § 609(d). On December 5, 2005, MDI d/b/a ACMI filed an Opposition to the Government's Motion to Transfer and Consolidate. On April 18, 2005, the Government filed a Supplemental Brief in Opposition.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under ... the Contract Disputes Act of 1978 [41 U.S.C. § 609(a)], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2); *see Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1270 (Fed.Cir.1999) (holding that "the Tucker Act grants the United States Court of Federal Claims jurisdiction to grant nonmonetary relief in connection with contractor claims, including claims requesting an interpretation of contract terms.").

Specifically, the Contract Disputes Act, 41 U.S.C. § 609(d), further provides:

> If two or more suits arising from one contract are filed in the United States Claims Court and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Claims Court may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

*Id.*

■ Our supervisory court has accorded the United States Court of Federal Claims "broad discretion" in exercising its discretion to transfer and consolidate a suit from an agency board, pursuant to 41 U.S.C. § 609(d). *See Joseph Morton Co. v. United States*, 757 F.2d 1273, 1280 (Fed.Cir.1985). Among the factors that the court should consider are: (1) whether the dispute before the board and the court concern the same contract; (2) whether the claims before the court and the board duplicate claims or have overlapping and related issues; (3) whether plaintiff initially chose to appeal its claims before a court or a board; (4) whether one forum or the other has already made significant progress on the claims; (5) whether concurrent resolution would result in an inefficient allocation of the court's, board's, or party's resources; (6) whether separate forums would reach inconsistent results. *See Giuliani Contracting Co. v. United States*, 21 Cl.Ct. 81, 83 (1990) (Rader, J.).[3]

### B. Standing.

Since the Government is a party to this action, Case No. 99–279C, as well as Case No. 99–529C, Case No. 99–530C, Case No. 00–531C, and Case No. 03–1537C, all pending in the United States Court of Federal Claims, wherein the Government has asserted defenses, as well as counterclaims in these actions, the Government has standing to request a transfer of a related case pending

---

**3.** The Honorable Randall R. Rader has been a Circuit Judge of the United States Court of Appeals for the Federal Circuit since 1990.

before a board to the United States Court of Federal Claims, pursuant to the Contract Disputes Act, 41 U.S.C. § 609(d).

### C. The Court's Resolution Of The Government's November 24, 2004 Motion To Transfer GSBCA No. 16503 To The United States Court Of Federal Claims And Consolidate.

#### 1. The United States Court Of Federal Claims Currently Has Jurisdiction Over "Two Or More Suits Arising From One Contract" And The General Services Administration Board Of Contract Appeals Has Jurisdiction Over A Claim Concerning The Same Contract.

■ The United States Court of Federal Claims has jurisdiction over Case No. 03–1537C, now consolidated with Case No. 99–279C, wherein the Government has asserted counterclaims in both cases against MDI d/b/a ACMI regarding Contract No. GS09P95KTC0032, the United States Courthouse and Federal Building in Sacramento. Therefore, the United States Court of Federal Claims has jurisdiction over "two suits arising from one contract" and the General Services Administration Board of Contract Appeals has jurisdiction over a claim involving the same contract.

#### 2. The Claims Before The United States Court Of Federal Claims And The General Services Administration Board Of Contract Appeals Are Related.

For the reasons previously discussed, the claims before the United States Court of Federal Claims in Case No. 03–1537C and Case No. 99–279C and the General Services Administration Board of Contract Appeals GSBCA No. 16503 concerning MDI d/b/a ACMI's performance on Contract No. GS09P95KTC0032 to construct the United States Courthouse and Federal Building in Sacramento are related.

#### 3. Plaintiff First Filed Claims In The United States Court Of Federal Claims.

As previously discussed, on May 5, 1999, July 29, 1999, September 1, 2000, and June 20, 2003, MDI or MDI d/b/a ACMI elected to bring five different actions in the United States Court of Federal Claims. ACMI did not file an appeal before the General Services Administration Board of Contract Appeals until September 20, 2004—and, after it had been sold.

#### 4. The United States Court Of Federal Claims Has Made Significant Progress In The Final Adjudication Of These Cases.

The United States Court of Federal Claims has made significant progress in the final adjudication of these claims, since all pending matters now are fully briefed and ripe for entry of a final judgment.[4] In fact,

---

4. The following are among the pleadings and memoranda that have been filed to date in the United States Court of Federal Claims: May 5, 1999 Complaint; July 23, 1999 Government Answer; November 8, 1999 Government Affirmative Defenses and Counterclaims; May 5, 2000 Government Additional Counterclaims (involving doorframes) and Special Plea in Fraud; January 10, 2001 MDI Answer to May 5, 2000 Government Counterclaims; May 10, 2001 Government (First) Amended Counterclaims; November 1, 2001 MDI Motion to Dismiss the Government's Seventh Counterclaim; November 20, 2001 (Second) Amended Counterclaims; December 7, 2001 Government Opposition to MDI's November 1, 2001 Motion to Dismiss and Motion for Partial Summary Judgment Regarding the Seventh Counterclaim together with

Exhibits 1–19 thereto; December 7, 2001 Government Proposed Findings of Uncontroverted Fact; February 27, 2002 MDI Reply to Government's Opposition and Response to Partial Summary Judgment, together with Genuine Issues and MDI's Proposed Findings of Uncontroverted Fact; March 18, 2002 MDI Answer to Government's (Second) Amended Counterclaims; August 21, 2002 MDI Sur–Reply and Exhibit A; July 9, 2002 Government Reply to MDI's February 27, 2002 Opposition, together with Appendix Exhibits 20–38; October 7, 2002 Government Sur-rebuttal and Opposition to MDI's Motion for Summary Judgment Regarding the Seventh Counterclaim, together with Exhibits 39–51; October 23, 2002 Government (Third) Amended Counterclaims; November 27, 2002 MDI Amended Answer to the Government's October 23, 2002 Amended Counter-

the court has issued on this date a Memorandum Opinion Regarding the Government's Anti–Kickback Act of 1986 Counterclaim concerning several federal contracts, including Contract No. GS09P95KTC0032, the same contract subject to GSBCA No. 16503.

### 5. Concurrent Resolution Would Result In An Inefficient Allocation Of Resources.

Since the claims filed in the United States Court of Federal Claims and the General Services Administration Board of Contract Appeals are related, to permit the actions to be resolved in two different forums would require a duplication of efforts by the parties and resulting in an inefficient allocation of judicial resources.

### 6. Separate Forums Could Reach Inconsistent Results.

It is possible that the United States Court of Federal Claims and the General Services Administration Board of Contract Appeals could reach inconsistent results regarding the legal issue of whether the GSA Contracting Officer's failure to act on ACMI's August 27, 2001 Certified Claim should be deemed a denial under 41 U.S.C. § 605(c)(3). Transfer to the United States Court of Federal Claims, however, would assure a uniform adjudication of this predicate to the Government's breach of contract claims regarding Contract No. GS09P9SKTC0032.

### 7. Transfer Serves The Interest Of Justice.

Since the counterclaims in Case No. 99–279C and Case No. 03–1537C concern Contract No. GS09P95KTC0032 to construct the United States Courthouse and Federal Building in Sacramento and the claims in GSBCA No. 16503 also concern the same contract, the transfer of GSBCA No. 16503 should not be inconvenient to the parties or witnesses. Moreover, the Honorable Catherine B. Hyatt of the General Services Administration Board of Contract Appeals has consented to this transfer. Therefore, the transfer of GSBCA No. 16503 to the United States Court of Federal Claims serves the interest of justice.

### 8. Consolidation Is Premature.

When the General Services Administration Board of Contract Appeals transfers GSBCA No. 16503 to the Clerk of the United States Court of Federal Claims and that matter is assigned a docket number, the court will consider the Government's November 24, 2004 Motion to Transfer and Consolidate under RCFC 42.1 and issue an Order, pursuant to RCFC 42(a). Until that time, however, consolidation is premature.

### CONCLUSION

For these reasons, GSBCA No. 16503 is hereby transferred to the United States Court of Federal Claims, pursuant to 41 U.S.C. § 609(d). When the Clerk of the United States Court of Federal Claims assigns a docket number to this case, the court promptly will be notified so that an Order may be issued to consolidate that case with Case No. 99–279C, Case No. 99–529C, Case No. 99–530C, Case No. 00–531C, and Case No. 03–1537C.

### IT IS SO ORDERED.

---

claim; September 5, 2003 MDI d/b/a ACMI Opposition to Government's Motion for Partial Summary Judgment and Response to Government's Proposed Findings of Uncontroverted Fact, together with three volumes of Exhibits; November 21, 2003 Government Answer and Counterclaim in Case No. 03–1537C; January 12, 2004 MDI d/b/a ACMI Answer to Government's November 21, 2003 Counterclaims; January 23, 2004 Government Reply Memorandum and Appendix Volume 7; January 23, 2004 MDI d/b/a ACMI Response to Government's Proposed Findings of Uncontroverted Fact; February 20, 2004 Transcript of Oral Argument; March 1, 2004 Supplemental Declaration of James Brogan; August 30, 2004 MDI d/b/a ACMI Supplemental Opposition; October 6, 2004 Government Response thereto.